In re COMMODORE INTERNATIONAL LIMITED, and Commodore Electronics Limited, Debtors.

Commodore International Limited and Commodore Electronics Limited, Debtors–in–Possession, by and through the Official Committee of Unsecured Creditors of Commodore International Limited and Commodore Electronics Limited, Plaintiffs,

v.

Irving Gould, Mehdi R. Ali, Alexander M. Haig, Jr., Ralph D. Seligman, Burton Winberg, J. Edward Goff, Hock E. Tan, Ronald B. Alexander and Anthony D. Ricci, Defendants.

Bankruptcy No. 94 B 42185 (JLG).
Adversary No. 97–8292A.

United States Bankruptcy Court,
S.D. New York.

March 9, 1999.

Cahill Gordon & Reindel, New York City, for defendants.

Stroock & Stroock & Levan, New York City, Counsel to the Official Creditors' Committee.

Fulbright & Jaworski, New York City, Counsel to the Liquidators.

*MEMORANDUM DECISION ON DEFEN-DANTS' SUPPLEMENTAL MOTION TO DISMISS THE COMPLAINT*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

The Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee") commenced this adversary proceeding on behalf of Commodore International Limited ("CIL") and Commodore Electronics Limited ("CEL" and, together with CIL, the "debtors") to recover damages arising from, among other things, the defendants' alleged breach of their fiduciary duties. The defendants are former officers

and directors of the debtors. They have moved for an order dismissing the complaint. The Committee filed papers in opposition to the motion. We grant it.

### Facts

The relevant facts are not in dispute. CIL is the parent company of CEL and other affiliated entities formerly engaged in the world-wide manufacture of personal computers and related products under the "Commodore" and "Amiga" brand names. CIL and CEL are Bahamian corporations and are the subject of liquidation proceedings pending in the Supreme Court for the Commonwealth of The Bahamas (the "Supreme Court"). Franklyn R. Wilson and MacGregor N. Robinson (the "Liquidators") are the court-appointed liquidators of those entities. CIL and CEL also are chapter 11 debtors in this court. Both courts approved a protocol (the "Protocol") relating to certain aspects of these dual proceedings.

With the Liquidators' consent, we have entered orders authorizing the Committee to prosecute various lawsuits on behalf of the debtors. By order dated on or about March 13, 1997, as supplemented by one dated on or about April 12, 1997, we authorized the Committee, on behalf of the debtors, to pursue preferential transfer claims against various third parties in the United States under §§ 547, 548 and 550 of the Bankruptcy Code. By order dated March 26, 1997, we authorized the Committee to pursue claims against former CEL/CIL directors and officers on the debtors' behalf. Defendants deny that they received notice of those orders or had an opportunity to be heard on them.

On or about April 3, 1997, the Committee commenced an action against Transpacific Company Limited ("TPC"), a Bahamian corporation controlled by Irving Gould, a defendant herein. *See Commodore International Ltd. v. Transpacific Corp. (In re Commodore International Ltd.)*, Case Nos. 94–B–42185 and 42186, Adv.Pro. No. 97–8294A. In that action, the Committee seeks to avoid certain payments by the debtors to TPC totaling approximately $10 million, as preferences and/or fraudulent transfers under §§ 547(b),

548 and 550 of the Bankruptcy Code. TPC has filed a motion to dismiss that action.

On or about April 2, 1997, the Committee commenced this adversary proceeding. In substance, in its complaint, the Committee contends that, notwithstanding the repeated warnings of debtors' outside auditors, the defendants failed and neglected to maintain adequate financial controls on behalf of the debtors and failed and refused to correct chronic internal accounting deficiencies, all of which contributed to debtors' financial collapse. It identifies a series of alleged fraudulent and preferential transfers of assets to insiders and affiliates, including the transactions which are the subject of the TPC litigation. The Committee alleges that by permitting the debtors to dispose of asserts when they were hopelessly insolvent, the defendants breached their fiduciary duties and engaged in corporate waste and mismanagement.

The defendants contend that the Liquidators violated Bahamian law when they delegated their authority to commence this litigation to the Committee. Accordingly, they applied to the Supreme Court for leave to commence a proceeding in that court seeking a declaration under controlling Bahamian law that the claims alleged against them herein can be prosecuted only by the Liquidators, and then only by leave of the Supreme Court. On or about July 24, 1997, the Supreme Court granted the defendants leave to initiate those proceedings, and they did. On or about December 8, 1997, the Supreme Court entered a Judgment declaring, among other things, that the Liquidators breached their statutory duties by authorizing, or acquiescing in, the commencement of this adversary proceeding by the Committee. More specifically, Justice Strachan of the Supreme Court granted the following declarations:

> A Declaration that [CEL and CIL] are not at liberty to institute, and or maintain, and or to prosecute, any action against the [defendants] in the United States Bankruptcy Court, Southern District of New York whether acting by and through any creditor or Committee of creditors or otherwise, and in particular, by and through the Official Committee of Unsecured Cred-

itors of [CIL and CEL] ... except by and through [the Liquidators] and with the approval of the [Supreme Court] pursuant to Section 212 of The Companies Act of 1992.

A Declaration that the [Liquidators] are in breach of their statutory duties and are or have been derelict in their duties as Officials of [the Supreme Court] in that they have caused, or authorized, or otherwise acquiesced in the commencement and the continuing prosecution of [the Committee's U.S. lawsuit] without the sanction of [the Supreme Court] or its directions in that regard.

On or about November 5, 1997, the Liquidators commenced a lawsuit (the "Bahamian Litigation") on behalf of CIL and CEL in the Supreme Court against the defendants. As the Committee concedes, the factual allegations and claims in that lawsuit are substantively similar to those made by the Committee on behalf of the debtors herein.[1] Moreover, it is undisputed that if the defendants are found liable under Bahamian law,

the Liquidators are asking the Supreme Court to order the defendants to pay any damage award to the CEL and CIL. *See* Summons at 9.

### Discussion

We have subject matter jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

■ The only argument that we are considering in the context of this supplemental motion to dismiss the complaint is whether the pendency of the Bahamian Litigation divests the Committee of any standing that it may have to prosecute this adversary proceeding. The defendants correctly contend that under *Unsecured Creditors Comm. v. Noyes (In re STN Enterprises)*, 779 F.2d 901, 904 (2d Cir.1985) ("*STN*")[2], a creditors'

---

1. A comparison of the Liquidators' Summons in the Bahamian Litigation and the Committee's complaint herein reveals, among other things, as follows:

   Both actions raise nearly identical allegations of improper conduct in the advancement of funds to CEL by TPC in 1993 and in transactions thereafter. (Complaint ¶¶ 9–10; Summons ¶¶ 3–4)
   Both actions raise allegations that the defendants knew or should have known that CEL and CIL were "hopelessly" insolvent no later than early 1993, and wrongfully permitted the companies to continue in business. (Complaint ¶ 6; Summons ¶ 2) Both actions assert claims sounding in breach of duty, mismanagement, waste of the companys' assets and a series of fraudulent and/or preferential transfers. (Complaint ¶ 6; Summons ¶ 2)
   Both actions raise nearly identical allegations that a sum of approximately $39 million was improperly transferred to Commodore subsidiaries in Japan and the Philippines. (Complaint ¶ 13; Summons ¶ 3)
   Both actions assert common law claims arising under the law of The Bahamas and other countries in the British Commonwealth. (Complaint ¶ 16; Summons ¶¶ 5–9).

2. In *STN*, the unsecured creditors' committee of a chapter 11 debtor in possession sought leave to sue the estate of the debtor's former president, stockholder and a director as well as his former wife (also a stockholder and director) for alleged-

ly orchestrating and/or receiving fraudulent or preferential transfers of the debtor's assets and committing corporate waste. *See* 779 F.2d at 902–03. The district court denied the motion. *See id.* at 903–04. Noting that the Bankruptcy Code contains no explicit authority for a creditors' committee to initiate adversary proceedings, our court of appeals found that " §§ 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit with the approval of the bankruptcy court." *Id.* at 904. It articulated the following circumstances under which that qualified right is properly conferred:

> If the committee presents a colorable claim or claims for relief that on appropriate proof would support a recovery, the district (or bankruptcy) court's threshold inquiry will still not be at an end. In order to decide whether the debtor unjustifiably failed to bring suit so as to give the creditors' committee standing to bring an action, the court must also examine, on affidavit and other submission, by evidentiary hearing or otherwise, whether an action asserting such claim(s) is likely to benefit the reorganization estate....
> The court's inquiries will involve in the first instance not only a determination of probabilities of legal success and financial recovery in event of success, but also a determination as to whether it would be preferable to appoint a trustee in lieu of the creditors' committee (bearing in mind any fees imposed on the

committee can sue in the debtor's name only in instances where the debtor unjustifiably fails to bring suit or abuses its discretion in refusing to sue to recover a preferential transfer. The defendants argue that the Committee cannot exercise its qualified right to assert the companies' claims herein, because the Liquidators are asserting the same claims directly on behalf of the companies in the Bahamian Litigation. The Liquidators contend that we must deny this motion because *STN* is inapposite. They maintain that there is no unity of estates among the debtors in possession in these chapter 11 cases, and the entities in liquidation in The Bahamas. They contend that when they act on behalf of CEL and CIL in The Bahamas, they do so as official liquidators under the laws of The Bahamas, and when they act on behalf of CEL and CIL in the United States, they do so as debtors in possession under United States law. Thus, they deny that the debtors have commenced any action against the defendants in The Bahamas, or else-

where. *See* Transcript of Hearing ("Tr.") 59:1–10;[3] *see also id.* 61:13–62:5.[4]

The claims underlying this lawsuit belong to CEL and CIL and can be asserted either directly by them or derivatively on their behalf. The Liquidators are asserting those claims directly on behalf of the companies in the Bahamian Litigation. Although these chapter 11 cases and the Bahamian liquidation proceedings are separate plenary proceedings pending in different courts, the Protocol joins them in order to provide "a framework for the efficient and effective administration of the bankruptcy cases for CEL and CIL in both the United States and The Bahamas." Protocol p. 5. One way that the Protocol achieves that goal is to provide that the Liquidators constitute the corporate governance of CEL and CIL, and to vest them with the rights, powers and duties of debtors in possession in the CEL and CIL chapter 11 cases.[5] Thus, the same

estate by such an appointment, the wishes of the parties, and other relevant factors) and the terms relative to attorneys' fees on which suit might be brought. The creditors who compose the committee may agree themselves to be responsible for all attorneys' fees, but if they would seek to impose such fees on other creditors or the chapter 11 estate, whether by contingent fee arrangement or otherwise, that would obviously affect the cost-benefit analysis the court must make in determining whether to grant leave to sue.

*Id.* (Citation omitted). Because the district court did not properly consider whether the debtor had unjustifiably failed to initiate suit and made certain erroneous legal conclusions, it reversed and remanded the matter for consideration of those issues. *See id.* at 905–06.

3. [LIQUIDATORS' COUNSEL]: The Liquidators when they are acting in the Bahamas are acting as the liquidators. They are not ... the United States Debtors in [P]ossession. There has to be a very important distinction and a bright line between the U.S. case and the powers of the Debtors in Possession in the United States and the power of the Bahamian Court and the Bahamian liquidators.
Tr. 59:1–10.

4. THE COURT: What you are saying then, putting it into the [STN] model is that the filing of the lawsuit in [The Bahamas] by the liquidators is not the commencement of an action in [The Bahamas] by the Debtor.
[LIQUIDATORS' COUNSEL]: Exactly. Let's say who it is. Not a commencement of the

action—the power to commence the action in the United States rests on the Trustee under the Bankruptcy Code, the Trustee/[D]ebtor in Possession. Let's call it a Trustee because I think it's much easier to understand. The lawsuit in [The Bahamas] was not brought by the United States Trustee or [a chapter 7 or 11 trustee]. I suppose, by the way, it could have been ... the U.S. entity to go to [The Bahamas] to bring a lawsuit, but that didn't happen. Tr. 61:13–62:5.

5. In relevant part, the Protocol states that "it is the intention of the Liquidators to serve the function customarily held by a debtor in possession under chapter 11 of the United States Bankruptcy Code ...," Protocol at 2, and that "[i]t now appears to the Liquidators that their obtaining the powers of a debtor in possession will offer advantages to the estates of CIL and CEL...." *Id.* at 3. Thus, in further relevant part, the Protocol provides, as follows:

The Committee intends that proceedings in the United States be conducted under chapter 11 ... with the Liquidators constituting the corporate governance and exercising the rights, powers, and duties of debtors in possession.
....
The cases of CEL and CIL in the United States should proceed under chapter 11, with the Liquidators having the rights, powers, and duties of debtors in possession.
....
To the extent that they are referred to as Liquidators exercising powers granted to them hereunder as debtor in possession, the references

individuals who are authorized under United States law (and the Protocol) to sue the defendants in the first instance, have done so, albeit in The Bahamas, pursuant to a Summons that is substantively identical to the Committee's complaint.[6] We agree with the defendants that *STN* is relevant to this motion.

The Committee insists that under *STN*, our central consideration should be whether its prosecution of this adversary proceeding is in the best interests of the estate. They contend that the defendants cannot give a single reason why we should disregard the consensual division of labor between themselves and the Liquidators, especially when allowing them to prosecute these claims makes economic sense and their counsel, rather than the Liquidators', are most knowledgeable about the facts underlying these claims. According to the Committee, the Protocol unambiguously provides that claims against debtors' officers and directors might

be prosecuted in the United States. *See* Protocol ¶ (4).[7] We disagree with the Committee's reading of *STN*. Contrary to the Committee's assertions, the *STN* court's concern was whether the debtor unjustifiably refused to pursue litigation, not whether the committee was better equipped to pursue that litigation, or the forum it chose was more favorable to the estate. *See STN*, 907 F.2d at 904. Moreover, while the Protocol provides that claims against the defendants can be prosecuted in the United States, under *STN* the Committee and the debtors cannot simultaneously prosecute substantively identical actions.

The Committee argues that the Bahamian Litigation has been adjourned *sine die* since December of 1997, that it was filed merely as "place saving" litigation to toll the expiration of any statute of limitations governing claims against the proceeds of defendants' insurance policies, and that it has always been the view

---

to Liquidators shall refer to debtor in possession....

*Id.* ¶¶ B,F,S; *see also id.* ¶ M 6. ("the Liquidators ... shall be authorized ... to ... cause CEL or CIL to commence material legal proceedings....").

6. Given that Messrs. Wilson and Robinson are acting as the Liquidators and debtors in possession, we find no merit to the Liquidators' concerns regarding potential conflicts among fiduciaries appointed by different courts for the same entities, who pursue identical claims against identical defendants, but in different lawsuits. For example, the debtors argue, as follows:

Let us assume that a Trustee or anybody acting for a Trustee in the United States [was] to bring a lawsuit in the United States against the directors and officers.

Let us assume that we have no protocol, simply parallel liquidations going around the world, but no protocol, no effort to ... harmonize the two estates. Then let's assume that the liquidators from Great Britain ... bring a lawsuit in the United States against the same officers and directors ... under diversity of jurisdiction in ... Georgia....

Now, that is an action that isn't prohibited under any ... Black Letter notion of our law. If ... the Trustee in the United States had first sued in this Court and the British liquidators ... had sued in Georgia, this court would not and could not dismiss under [*STN*]. [*STN*] would have nothing to do with it, not a thing.... Here, *STN* is relevant because the same representative is seeking to pursue the claims against the defendants directly in The

Bahamas and to delegate to the Committee the companies rights to pursue those claims.
Tr. 63:25–64:22.

7. Paragraph 4 of the Protocol reads as follows:

By virtue of the Liquidators' continuing investigation and other matters which have come to the attention of the Liquidators, they have had an opportunity to scrutinize the acts, conduct, property, and affairs of Commodore, its subsidiaries and their former officers, directors, and management and other insiders in the many jurisdictions in which Commodore carried on business. As a consequence, the Liquidators have claims against officers, directors, and management, and other insiders ultimately may be available to the Liquidators, of which some may be pursued most effectively in the courts of the United States. A factor which the Liquidators have taken into account is that the directors and officers liability insurance policy was issued by companies operating in the United States. Foreseeing such a possibility at the outset of the liquidations that litigation might ultimately be necessary in the United States, the Liquidators advised the parties in their papers filed in Bankruptcy Court that they would consent to the entry of an order for relief under chapter 11 if they were to determine that relief under chapter 11 were in the best interests of the Liquidators and creditors. It now appears to the Liquidators that their obtaining the powers of a debtor in possession through chapter 11 cases in the Bankruptcy Court will offer advantages to the estates of CIL and CEL....
Protocol ¶ (4) at 3–4.

of both the Committee and the Liquidators that the Bahamian Litigation should remain dormant pending the outcome of this adversary proceeding. Thus for the Committee, there is nothing improper about separate actions raising essentially the same claims proceeding in different jurisdictions where, as here, there are legitimate concerns as to whether an action will be allowed to proceed in the forum selected by the plaintiff.

Whether the Liquidators filed the Bahamian Litigation as "place saving" litigation and only to toll applicable statutes of limitation is irrelevant to the *STN* analysis. What is relevant is that the Liquidators have brought the action and it is substantively identical to this lawsuit. In any event, the defendants are actively pursuing that litigation in The Bahamas.

The Committee also maintains that it has satisfied *STN* because the Liquidators refused to proceed with the litigation in this court. To be sure, the Liquidators consented to the Committee bringing this lawsuit. However, thereafter, the Supreme Court held that under Bahamian law, the Liquidators erred in so consenting, and the Liquidators commenced the Bahamian Litigation. Under the Protocol, the Supreme Court's determination may dispose of this motion. That is because the intent of the Liquidators and the Committee in executing the Protocol was

> that the assets of the estate be liquidated and distributed and that the cases be administered in as economical and efficient a manner as may appear practicable under the circumstances, with one court deferring to the judgment of the other where feasible and the subject matter of a particular matter, action, proceeding, contested matter or adversary proceeding being determined in one court, where feasible.

Protocol ¶ E; *see also id.* at 2.[8] We should defer to the judgment of the Supreme Court on the issue of whether the Liquidators vio-

lated Bahamian law when they agreed to permit the Committee to commence this action, even though the Liquidators are appealing that ruling. In any event, we need not rest upon the effect of the Supreme Court's ruling. By application of the legal principles enunciated in *STN*, we find that the Liquidators' commencement of the Bahamian Litigation divests the Committee of standing to bring this litigation, irrespective of the outcome of the appeal in The Bahamas. To that end, *In re Nicolet, Inc.*, 80 B.R. 733 (Bankr. E.D.Pa.1987) and *Official Creditors' Committee of Wesco Products Co. v. Alloy Automotive Co. (In re Wesco Products Co.)*, 22 B.R. 107 (Bankr.N.D.Ill.1982), are instructive.

In *Wesco,* the official committee of unsecured creditors obtained bankruptcy court approval and sued certain creditors of the debtor alleging fraud, misrepresentation, breach of fiduciary duty and breach of contract. *See* 22 B.R. at 109. Approximately four months later, the debtor filed its own amended complaint against the same defendants alleging substantially identical claims. *See id.* The defendants in the committee's adversary proceeding moved to dismiss the complaint based upon, among other things, the committee's lack of standing to bring the action on behalf of the estate. *See id.* at 108. The court found that under § 1103(5) of the Bankruptcy Code, the committee had an implied right to bring an adversary proceeding on behalf of the estate, but that it could invoke that right only when the debtor unjustifiably failed to bring suit or otherwise abused its discretion in performing its duties as representative of the estate. *See id.* The court granted the motion, finding that by filing a substantially identical adversary proceeding, the debtor was acting in good faith and performing its duties, thereby precluding the committee from invoking its implied right to bring the action. *See id.*

In *Nicolet,* a creditors' committee moved for an order authorizing it to bring an action

---

8. There, the Protocol states that:
   It is the further purpose of the parties to memorialize and acknowledge that while dual proceedings are pending in The Bahamas and the United States, the parties will respect the independent non-delegable duties imposed by

the laws of the respective countries, to wit: upon the Liquidators under Bahamian law; upon the debtor in possession under United States law; and upon the Committee under the legal systems of both countries.

on behalf of the estate against various entities seeking to avoid allegedly fraudulent and/or preferential transfers. However, pending final submissions of the parties with respect to that motion, the debtor filed its own adversary complaint alleging the same causes of action. *See* 80 B.R. at 735–36. For this reason, the court denied the committee's motion, stating that:

> [w]hile several considerations coalesce to cause us to observe that the Committee would have been entitled to file a legal action, in its own name, if the Debtor had persisted in its refusal to do so, we are forced to conclude that the Debtor's institution [of its own suit] must result in our denial of the Committee's motion at this time.

*Id.* at 737; *see also id.* at 740 ("We therefore decide that, solely because the DIP has instituted suit against two targets of the Committee's Motion, that Motion must be denied.").

 The Committee distinguishes those cases on the grounds that those debtors intended to pursue their litigation and did not explicitly assert a preference for the creditors' committee to pursue the claims against the defendants. Neither factor is relevant to our analysis and, in any event, the Bahamian Litigation is proceeding in The Bahamas. Moreover, if the Committee is dissatisfied about how the Liquidators are conducting its litigation, it can petition that court to intervene therein. The Committee also contends that in both cases, the debtor commenced its action in the same court in which the committee intended to proceed, rather than a distant and inconvenient forum disfavored by creditors. That factor likewise is irrelevant to our analysis. In any event, the Committee has local counsel in The Bahamas and has appeared in that court on several occasions.[9]

9. We also find that the Committee has misplaced its reliance on *Liberty Mutual Ins. Co. v. Official Unsecured Creditors Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899 (9th Cir. BAP 1997). In that case, the defendant in an adversary proceeding commenced by a creditors' committee for alleged violations of the automatic stay sought a declaration that the committee lacked standing to bring

*Conclusion*

We dismiss the complaint.

SETTLE ORDER.

the litigation in light of its failure to obtain the prior approval of the bankruptcy court. *See id.* at 903. However, because the debtor in possession agreed that the committee should bring the action on behalf of the estate, the court concluded that dismissal of the action "would generate needless dismissals and refilings". *Id.* at 905. There, however, the debtor did not bring its own suit.