Unsecured Creditors of Commodore International Limited and Commodore Electronics Limited, Plaintiffs-Appellants,

v.

Irving Gould, Mehdi R. Ali, Alexander M. Haig, Jr., Ralph D. Seligman, Burton Winberg, J. Edward Goff, Hock E. Tan, Ronald B. Alexander, and Anthony D. Ricci, Defendants-Appellees.

Docket No. 00–5082.

United States Court of Appeals, Second Circuit.

Argued July 9, 2001.

Decided Aug. 9, 2001.

In re COMMODORE INTERNATIONAL LIMITED and Commodore Electronics Limited, Debtors.

Commodore International Limited, Debtor-in-Possession by and through the Official Committee of Unsecured Creditors of Commodore International Limited and Commodore Electronics Limited, Commodore Electronics Limited, Debtor-in-Possession by and through the Official Committee of

Curtis C. Mechling (Adam S. Grace, Of Counsel), Stroock & Stroock & Lavan, LLP, New York, NY (for Plaintiffs-Appellants Creditors Committee).

Jonathan D. Thier (Richard C. Schoenstein, Of Counsel), Cahill Gordon & Reindel, New York, NY (for Defendants-Appellees).

Before WALKER, Chief Judge, CABRANES and STRAUB, Circuit Judges.

JOHN M. WALKER, Jr., Chief Judge:

The Official Committee of Unsecured Creditors of Commodore International Limited and Commodore Electronics Limited ("the Creditors' Committee"), suing on behalf of the debtor corporations, appeals from an October 6, 2000 judgment of the United States District Court for the Southern District of New York (Richard C. Casey, District Judge) that dismissed the Creditors' Committee's suit against defendants-appellees, various directors and officers of the debtor corporations. For the reasons set forth below, that judgment is affirmed.

The background of this case has been substantially detailed in *In re Commodore Int'l, Ltd.*, 231 B.R. 175, 176-77 (Bankr. S.D.N.Y.1999) (*"Commodore I"*). Only the facts relevant to this appeal are set out herein.

This dispute concerns the bankruptcy of two Bahamian corporations: Commodore International Limited and Commodore Electronics Limited (collectively "Commodore"), a parent and its subsidiary, respectively. Prior to its insolvency, Commodore was engaged in the world-wide manufacture of personal computers and related products under the "Commodore" and "Amiga" brand names.

Bankruptcy proceedings involving Commodore are pending before both the Supreme Court of the Commonwealth of The Bahamas ("Bahamian Court") and the United States Bankruptcy Court in New York ("Bankruptcy Court"). Pursuant to an agreement ("Protocol") between the Creditors' Committee of the New York action and Frank R. Wilson and MacGregor N. Robinson, the court-appointed liquidators in the Bahamian action ("the Liquidators"), the Bahamian Court and the Bankruptcy Court are jointly administering Commodore's bankruptcy.[1] With court

---

1. It appears from the record before us that the Bankruptcy Court action is a chapter 11 corporate reorganization, while the Bahamian Court action is a corporate liquidation, which is more akin to a chapter 7 bankruptcy proceeding under the United States Bankruptcy Code. *See generally* Samuel A. Caulfield, *Fraudulent and Preferential Conveyances*

approval, the Liquidators have been granted the rights, powers and duties of debtors in possession in the Bankruptcy Court action. *See* 11 U.S.C. § 1107(a); *see generally* 3 *Collier on Bankruptcy* §§ 1107.01 to 1107.04 (3d ed. 2001) [hereinafter *"Collier"*].

In the normal course, the Liquidators--having the powers and duties of a debtor in possession--would pursue Commodore's viable legal claims in an effort to increase the size of the bankruptcy estate. *See generally* 3 *Collier, supra,* at § 1107.02[3] (discussing debtor in possession's fiduciary duties). However, on or about March 26, 1997, the Liquidators instead consented to the Creditors' Committee's pursuing Commodore's claims for fraud, waste and mismanagement against the defendants, various former officers and directors of Commodore. *See* 11 U.S.C. § 1109(b). The Bankruptcy Court entered a general order approving of this arrangement.

The following sequence of events then occurred. On April 2, 1997, the Creditors' Committee brought suit in the Bankruptcy Court against the defendants. On June 2, 1997, the defendants moved to dismiss the action based on, *inter alia,* forum non conveniens and international comity grounds. Thereafter, on November 5, 1997, the Liquidators filed suit in the Bahamian Court against the defendants asserting identical claims to those set forth in the Creditors' Committee's complaint in the Bankruptcy Court.[2]

On March 11, 1998, the Bankruptcy Court directed the parties to address whether, in light of the Liquidators' Bahamian suit, the Creditors' Committee still retained standing to prosecute an identical suit in the Bankruptcy Court. After briefing and oral argument on the issue, the Bankruptcy Court held that the Liquidators' suit divested the Creditors' Committee of standing to pursue claims against the defendants, and it therefore dismissed the action. *See Commodore I,* 231 B.R. at 180 (holding that "the Liquidators' commencement of the Bahamian Litigation divests the Committee of standing to bring this litigation"). The district court affirmed the dismissal on October 4, 2000, *see In re Commodore Int'l Ltd.,* 253 B.R. 336, 339 (S.D.N.Y.2000) (*"Commodore II"*), and this appeal followed.

Before us the parties have joined issue on two questions. The first is whether a creditors' committee can sue on behalf of a debtor *only* where the debtor has unjustifiably refused to bring the action, as defendants assert, *cf. In re The Gibson Group, Inc.,* 66 F.3d 1436, 1443 (6th Cir.1995); *In re Nicolet, Inc.,* 80 B.R. 733, 739-40 (Bankr.E.D.Pa.1988); *In re Wesco Prods. Co.,* 22 B.R. 107, 109-10 (Bankr.N.D.Ill. 1982), or whether a creditors' committee can also obtain standing with the debtor's consent and bankruptcy court approval, as the plaintiff Creditors' Committee contends. The second is whether, assuming a creditors' committee can obtain standing with the consent of the trustee, debtor in possession, or court-approved representative with similar authority such as the Liquidators here, that consent can be withdrawn unilaterally, without court permis-

---

*of the Insolvent Multinational Corporation,* 17 N.Y.L. Sch. J. Int'l & Comp. L. 571, 577 (1997) (noting that one difficulty with dual bankruptcy proceedings is that the two nations' policies may conflict regarding whether to reorganize or liquidate the debtor corporation).

**2.** According to the Creditors' Committee,

the Liquidators commenced the Bahamian proceeding because the defendants' attack on th[e] [Bankruptcy Court] proceeding gave them reason to fear a possible loss of the claims (by virtue of the statute of limitations)....

*See also Commodore I,* 231 B.R. at 179-80.

sion once the creditors' committee has commenced suit. If consent cannot be unilaterally revoked, the Creditors' Committee contends, then both the Bankruptcy Court and the district court erred in treating the Liquidators' filing suit in The Bahamas as an automatic withdrawal of the consent upon which its standing was based.

Because, as we explain below, our answer to the first question is dispositive in light of the present posture of the dual bankruptcy proceedings, we do not reach the second question and express no view on it.

On the first question, the district court agreed with the defendants that " 'creditors committees have an implied . . . right . . . to initiate adversary proceedings . . . only when the trustee or debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing to avoid a preferential transfer.' " *Commodore II*, 253 B.R. at 339 (quoting *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir.1985)). In arriving at this conclusion, the district court relied on this court's decision in *STN Enterprises*. In *STN Enterprises*, this court held that while "[u]sually . . . the debtor in possession initiates proceedings to recover" on the debtor's legal claims, there is a "qualified right for creditors' committees to initiate [such] adversary proceedings in the name of the debtor in possession" with "the approval of the bankruptcy court." *In re STN Enters.*, 779 F.2d at 904. We noted that courts have only so approved when the "debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing to avoid a preferential transfer." *Id.*

The district court read *STN Enterprises* as foreclosing any other basis for creditors' committee standing. We disagree with this reading, however. *STN Enterprises* neither presented nor required this court's

consideration of whether a creditors' committee can gain standing in situations other than the unjustified failure of the debtor in possession to bring suit.

Therefore, we approach the question of whether a creditors' committee may gain standing with the consent of a trustee, debtor in possession, or court-approved representative having similar authority, as a matter of first impression in this circuit. *See generally* 3 *Collier, supra,* at § 1103.05[6] (noting debtors have requested that creditors' committees prosecute actions against former officers, important customers, and key suppliers). In doing so, we find persuasive the reasoning of the Bankruptcy Appellate Panel of the Ninth Circuit in *Spaulding Composites Co.*:

> The [debtor in possession] has an obligation to pursue all actions that are in the best interests of creditors and the estate. An unsecured creditors' committee has a close identity of interests with the [debtor in possession] in this regard. Allowing the [debtor in possession] to coordinate litigation responsibilities with an unsecured creditors' committee can be an effective method for the [debtor in possession] to manage the estate and fulfill its duties. . . . Rather than a flat prohibition, impartial judicial balancing of the benefits of a committee's representation better serves the bankruptcy estate.

*In re Spaulding Composites Co.*, 207 B.R. 899, 904 (9th Cir. BAP 1997) ("*Spaulding Composites*") (internal citations omitted); *see also Coral Petroleum v. Banque Paribas-London*, 797 F.2d 1351, 1362-63 (5th Cir.1986) (same); *In re Colfor, Inc.*, No. 96-60306, 1998 WL 70718, at *2 (Bankr. N.D.Ohio Jan.5, 1998). Based on this reasoning, the court in *Spaulding Composites* held that a debtor in possession may stipulate to representation by an unsecured creditors' committee "[s]o long as the

bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial." *Spaulding Composites,* 207 B.R. at 904.

■ We adopt an approach similar to that followed by the court in *Spaulding Composites:* A creditors' committee may acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is "necessary and beneficial" to the fair and efficient resolution of the bankruptcy proceedings. *Id.* This approach permits a reasoned and practicable division of labor between the creditors' committee and the debtor in possession or trustee, while also providing bankruptcy courts with significant authority both to manage the litigation and to check any potential for abuse by the parties. *Cf. In re Gibson Group, Inc.,* 66 F.3d 1436, 1441 (6th Cir.1995) ("A debtor-in-possession often acts under the influence of conflicts of interest and may be tempted ... to favor certain creditors over others....").

■ Turning to the facts of the instant case, to date neither the Bankruptcy Court nor the district court has considered whether suit by the Creditors' Committee (rather than the Liquidators) is "necessary and beneficial" to the fair and efficient resolution of Commodore's liquidation. Thus, the Creditors' Committee has not yet gained standing. Ordinarily a remand might be in order to permit the Bankruptcy Court or the district court to consider whether suit by the Creditors' Committee

is in fact "necessary and beneficial." *Cf. In re STN Enters.,* 779 F.2d at 906. However, we believe the Liquidators' Bahamian suit--in which, as the Bankruptcy Court noted, the Creditors' Committee "can petition ... to intervene"--has plainly made unnecessary suit by the Creditors' Committee in the Bankruptcy Court in New York, thus foreclosing the possibility of the Creditors' Committee gaining standing.[3]

■ To recap, we hold that a creditors' committee may sue on behalf of the debtors, with the approval and supervision of a bankruptcy court, not only where the debtor in possession unreasonably fails to bring suit on its claims, but also where the trustee or debtor in possession consents. In the latter situation, however, suit by the creditors committee must be necessary and beneficial to the resolution of the bankruptcy proceedings. Because the Creditors' Committee has not yet gained standing and because suit by it is neither necessary nor beneficial in light of the Liquidators' having filed an identical suit in The Bahamas, we affirm the judgment of the district court dismissing the action.

## CONCLUSION

The district court's judgment is affirmed. Each side to bear its own costs of the appeal.

---

**3.** Perhaps of equal (if not greater) moment is the fact that, since the Liquidators first consented to the Creditors' Committee's suit, "the [Bahamian] Court held that under Bahamian law, the Liquidators erred in so consenting." *Commodore I,* 231 B.R. at 180. Given that Commodore's bankruptcy is being jointly ad-

ministered by both the Bahamian Court and the Bankruptcy Court, we doubt that permitting the Creditors' Committee to proceed on the basis of consent provided in violation of Bahamian law (as interpreted by the Bahamian Court) would be "beneficial" to the resolution of the joint proceedings.