310 F.3d 64
 In re HOUSECRAFT INDUSTRIES USA, INC.
Gleb Glinka, Esq., trustee and Howard Hoppenheim, trustee in bankruptcy for Robojo, Inc., Plaintiffs-Appellees,
Banque Nationale de Paris, (Canada), Plaintiff-Counter-Defendant-Appellee,
v.
Abraham Murad, Defendant-Counter-Claimant,
Abraham and Rose Company, Ltd., f/k/a 142761 Canada, Inc., Abraham and Rose, Inc., a/k/a Abraham & Rose, Inc., Roy Murad and Allen Stern, Defendants,
v.
Federal Plastics Manufacturing, Ltd., Defendant-Appellant.
 Docket No. 01-7998.
 United States Court of Appeals, Second Circuit.
 Argued: May 8, 2002.
 Decided: October 24, 2002.
 
 Norman Williams, Gravel and Shea, Burlington, VT (Heather A. Rider, Robert F. O'Neill, on the brief), for Defendant-Appellant.
 Andre D. Bouffard, Downs Rachlin Martin, P.C., Burlington, VT (Gleb Glinka, Glinka & Schwidde, Cabot, VT, on the brief), for Plaintiffs-Appellees and Plaintiff-Counter-Defendant-Appellee.
 Before: VAN GRAAFEILAND, KEARSE, and B.D. PARKER, Circuit Judges.
 B.D. PARKER, JR., Circuit Judge.
 
 
 1
 Plaintiffs Gleb Glinka (the "Trustee"), the trustee in bankruptcy for Housecraft Industries USA, Inc., and Banque Nationale de Paris ("BNP"), Housecraft's primary secured creditor,[1] brought claims against defendant Federal Plastics Manufacturing, Ltd. pursuant to 11 U.S.C. §§ 548 and 549, seeking to recover the proceeds of property that Housecraft had fraudulently transferred to Federal Plastics both before and after Housecraft filed for bankruptcy. The United States District Court for the District of Vermont (William K. Sessions, III, Judge) denied Federal Plastics' motion to dismiss for lack of subject matter jurisdiction and to dismiss BNP for lack of standing. Glinka v. Abraham & Rose Co. Ltd., 199 B.R. 484 (D.Vt.1996). Following a bench trial, the court below entered judgment in favor of the plaintiffs. Federal Plastics appeals the denial of its motion to dismiss as well as the District Court's denial of its request to set off against the judgment the value of materials shipped post-petition. We affirm.
 
 BACKGROUND
 
 2
 Housecraft manufactured and assembled housewares and a variety of other plastic products at its plant in St. Albans, Vermont using raw plastic supplied by Federal Plastics. In August 1990, Housecraft entered into a two-year contract with one of its customers, Santé Naturelle, LTEE, to produce containers for Nutribar, a dietary product sold by Santé. By 1991, Housecraft was experiencing serious financial difficulties affecting its ability to pay suppliers such as Federal Plastics, and, as a result, scaled back its manufacturing activities. By the end of June 1991, Housecraft owed Federal Plastics $88,992.
 
 
 3
 In September 1991, Housecraft wrote to Santé directing it to send payment for shipments of Nutribar containers to a company known as Primex Plastics, claiming that Primex was an affiliate of Housecraft. In fact, Primex was an unaffiliated Canadian company controlled by the son of the owner of Federal Plastics. Thereafter, Housecraft shipped the containers to Federal Plastics instead of Santé, and Federal Plastics sold the containers to Santé through Primex. Federal Plastics collected the payments made by Santé for the Nutribar containers, either directly or through Primex.
 
 
 4
 Housecraft filed for Chapter 11 bankruptcy protection in October 1991. (The case was converted to Chapter 7 in March 1992.) Housecraft's bankruptcy spawned criminal bankruptcy fraud charges against numerous individuals, including the president of Housecraft, Abraham Murad, who pled guilty to bankruptcy fraud in March 1995. In filing for bankruptcy, Housecraft failed to list the Nutribar container contract on its schedule of executory contracts. Following the filing, Housecraft continued to transfer Nutribar containers to Federal Plastics, and Federal Plastics continued to sell these containers to Santé and to collect payments from Santé. This case arose from these transfers of containers both before and after Housecraft filed for bankruptcy protection.
 
 
 5
 In April 1992, the Trustee and BNP brought claims against two Abraham Murad companies for turnover of property that had been seized by the FBI while investigating the Housecraft bankruptcy. Federal Plastics intervened, claiming possession of some of the seized property. The Trustee and BNP then amended their complaint to include claims against Federal Plastics pursuant to §§ 548 and 549 of the Bankruptcy Code to recover the value of the Nutribar containers.[2] Section 548(a)(1) provides for avoidance of pre-petition fraudulent transfers based on a showing of actual or constructive fraud.[3] Section 549(a), which pertains to the avoidance of post-petition transfers, provides that "the trustee may avoid a transfer of property of the estate ... that occurs after the commencement of the case ... [and] that is not authorized under this title or by the court."
 
 
 6
 Federal Plastics moved to dismiss BNP for lack of standing, arguing that §§ 548 and 549 only authorize trustees or debtors-in-possession — not creditors — to bring avoidance actions. The motion also sought to dismiss the claims for lack of subject matter jurisdiction under 28 U.S.C. § 1334(b), which grants district courts jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." In support of this assertion, Federal Plastics argued that § 1334(b) only confers jurisdiction over claims that can conceivably affect the bankruptcy estate, and the claims against it could not affect the estate because, as a secured creditor, BNP alone would be entitled to any recovery from the litigation.
 
 
 7
 In response to the motion, the Trustee moved for retroactive ratification of an agreement between himself and BNP for joint prosecution of the adversary proceeding (the "Agreement"). Under this agreement, the Trustee and BNP were required to prosecute the claims against Federal Plastics jointly, and BNP was to bear the cost of the litigation. The Agreement provided that "BNP and [the] Trustee will confer on decisions concerning the claims to be jointly prosecuted, and all such claims may be compromised or settled only with the express consent of BNP." In return for BNP's financial assistance, the Trustee agreed that any recovery from the litigation would be paid in the following order: (1) litigation costs and attorney's fees to BNP, (2) $15,000 to Housecraft's estate, and (3) the balance to be split, 80% for BNP and 20% for the estate. In support of the motion for ratification, the Trustee asserted that "Housecraft's Estate, the Trustee, and Trustee's counsel do not have the present resources to prosecute the ... [l]itigation" and that "[w]ithout BNP's commitment to devote its own resources to prosecute the ... [l]itigation,... the exercise of sound business judgment would require the Trustee to abandon these Claims." (Gleb Glinka, Trustee's Mot. for Ratification of Agreement Between Trustee and Banque Nationale de Paris (Canada) for Joint Prosecution, Apr. 19, 1995, at 2.)
 
 
 8
 Federal Plastics opposed the motion, claiming that the Agreement amounted to a collusive sale to BNP of a claim belonging exclusively to the Trustee for the sole purpose of creating federal jurisdiction. BNP and the Trustee maintained that the Agreement was a legitimate settlement of a potential dispute between them over the right to the proceeds of the litigation. Although both plaintiffs agreed that BNP's claim to the Nutribar containers had priority, the Nutribar containers had been sold, leaving recovery of a money judgment for the value of the containers as the sole viable remedy. The plaintiffs claimed that the Agreement originated in part from their uncertainty over whether a secured creditor with a pre-petition lien on fraudulently transferred inventory could also assert a lien on the trustee's right to recover its value, and that the Agreement represented a fair compromise of their anticipated dispute over this issue.
 
 
 9
 In June 1995, the Bankruptcy Court ratified the Agreement, finding that pursuing Federal Plastics to recover sizable fraudulent conveyances was "in the best interest of the Estate and creditors."[4] The District Court then denied Federal Plastics' motion to dismiss for lack of subject matter jurisdiction, as well as its motion to dismiss BNP for lack of standing. Glinka, 199 B.R. 484. The court found that it had subject matter jurisdiction over the Title 11 claims because 28 U.S.C. § 1334(b) confers "arising under" jurisdiction on any claim that "relies on Title 11 for its cause of action." Id. at 490. The District Court also found that BNP had standing despite the fact that Title 11 expressly authorizes only the trustee or a debtor-in-possession to bring §§ 548 and 549 claims. Id. at 493-94. In making this determination, the court relied upon our decision in Unsecured Creditors Committee v. Noyes (In re STN Enterprises), 779 F.2d 901, 904 (2d Cir.1985) ("STN"), which permitted a committee of unsecured creditors to bring suit on behalf of a bankruptcy estate when the trustee unjustifiably refused to do so. Although the Trustee of Housecraft's estate was a willing participant in this lawsuit, the District Court held that BNP had standing pursuant to STN because it was in the best interest of the estate. Glinka, 199 B.R. at 494. The court reasoned that:
 
 
 10
 The creditor is bearing the cost of the litigation. Under the terms of the joint prosecution agreement, in order to be reimbursed out of any recovery, litigation expenses must be "reasonable." Any application for attorneys' fees will be subject to judicial scrutiny. If their suit is successful, the plaintiffs have agreed upon their respective shares of any recovery, with the intention of avoiding additional litigation over BNP's ability to assert a security interest in a recovery.
 
 
 11
 Because the suit presents colorable claims for relief; because Trustee would have failed to pursue the suit without the assistance of BNP; and because there is no net financial burden on the bankruptcy estate, BNP is entitled to standing under STN.
 
 
 12
 Id. (internal citation omitted).
 
 
 13
 The case proceeded to trial in September 2000. During the trial, Federal Plastics argued that the pre-petition transfers did not violate § 548 because Housecraft did not "receive[ ] less than a reasonably equivalent value in exchange for [the] transfer or obligation," as is required to demonstrate constructive fraud under § 548(a)(1)(B)(i). Federal Plastics claimed that it paid fair consideration for the containers via "swap" transactions, in which Federal Plastics gave Housecraft three to four truckloads of raw plastic in exchange for 962,000 Nutribar containers. The District Court rejected this argument, concluding that there was no credible evidence of these "swap" transactions because there was no documentation of the alleged shipments of raw plastic, while "[a]ll other shipments of raw plastic by Federal Plastic[s] to Housecraft were thoroughly documented." (Mem. of Decision and Order at 7.)
 
 
 14
 Federal Plastics also claimed that the transfers did not violate § 549 because, after Housecraft filed for bankruptcy, the two companies entered into a new business arrangement that was sanctioned by the Bankruptcy Court whereby Federal Plastics supplied the raw material to Housecraft on consignment. Again, the District Court rejected Federal Plastics' argument, finding that there was no credible evidence of this new arrangement because "Federal Plastics' invoices and internal documentation for the plastic shipped supposedly on consignment are identical to the documents produced under their previous credit sales arrangement." (Id. at 10.) The court further noted that there was "no evidence that Housecraft obtained the authorization of or disclosed to the bankruptcy court the post-petition transfers of Nutribar containers," as is necessary to avoid liability under § 549. (Id. at 11.) Instead, the court concluded that "[a]t a time when Housecraft owed Federal Plastics more than $80,000 for plastic purchased on credit that Housecraft was unable to pay, Housecraft and Federal Plastics made a deal that essentially transferred Housecraft's lucrative contract with Santé to Federal Plastics." (Id. at 11-12.)
 
 
 15
 Based upon these factual findings, the District Court held that Housecraft's pre-petition conveyances were fraudulent transfers under § 548 and that the post-petition transfers were also fraudulent under § 549. (Id. at 18, 22.) The District Court also rejected Federal Plastics' argument that it was entitled to a setoff against the judgment in the amount of $37,775 for the value of the raw plastic it shipped to Housecraft post-petition. (Id. at 28-29.) The court reasoned that no authority existed for allowing such a setoff against the value of an avoided post-petition transfer of property. Accordingly, the District Court entered judgment in favor of the plaintiffs for $127,850, the full value of the property transferred, plus interest. Federal Plastics timely appealed.
 
 DISCUSSION
 I. Subject Matter Jurisdiction
 
 16
 Federal Plastics argues that jurisdiction under 28 U.S.C. § 1334(b) does not extend to claims that cannot benefit or otherwise affect the estate, and, because BNP has a secured interest in the Nutribar containers, prior to the Agreement only BNP — and not the estate — would have been entitled to any recovery from Federal Plastics. Accordingly, Federal Plastics argues that the District Court did not have subject matter jurisdiction over the Title 11 claims before BNP relinquished a portion of the recovery to the estate by entering into the Agreement. Federal Plastics then argues that, pursuant to 28 U.S.C. § 1359, the plaintiffs could not create subject matter jurisdiction by entering into an agreement that assigned a token portion of the recovery to the estate.[5]
 
 
 17
 We pause only briefly to address Federal Plastics' jurisdictional argument, as claims "arising under" Title 11 need not affect or benefit the estate as a condition of bankruptcy jurisdiction. Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Because the plaintiffs' §§ 548 and 549 claims clearly invoke substantive rights created by bankruptcy law, they necessarily "arise under" Title 11. See Browning v. Levy, 283 F.3d 761, 772-73 (6th Cir.2002) (holding that "arising under" jurisdiction exists where one invokes a substantive right created by federal bankruptcy law); Wood v. Wood (Matter of Wood), 825 F.2d 90, 96 (5th Cir.1987) (finding that "Congress used the phrase `arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11"); see also Pereira v. Sonia Holdings, Ltd. (In re Artha Management, Inc.), 91 F.3d 326, 328 (2d Cir. 1996) (noting that a fraudulent conveyance claim brought pursuant to, inter alia, 11 U.S.C. § 548 "arose under the Bankruptcy Code"); cf. 28 U.S.C. § 157(b) (2000) (stating that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11" and that "[c]ore proceedings include... proceedings to determine, avoid, or recover fraudulent conveyances"). Consequently, "arising under" jurisdiction would exist here even if the litigation could not affect the estate.[6]
 
 II. Standing
 
 18
 Federal Plastics argues that, as a secured creditor, BNP did not have standing to bring the Title 11 claims because the Bankruptcy Code limits standing under §§ 548 and 549 to a trustee or a debtor-in-possession. 11 U.S.C. §§ 548, 549; see also 11 U.S.C. § 1107(a) (2000) (granting to a debtor-in possession "all the rights... of a trustee serving in a case under this chapter"). We disagree. Although not explicitly authorized in the Code, we have extended standing to bring fraudulent conveyance claims under §§ 548 and 549 to additional parties such as creditors when to do so is in the best interest of the estate. In STN, an unsecured creditors' committee moved for leave to sue the recipient of fraudulent transfers from the debtor. We held that an unsecured creditors' committee may initiate an adversary proceeding in the name of a debtor-in-possession if the debtor-in-possession unjustifiably refuses to bring suit. STN, 779 F.2d at 904.
 
 
 19
 In Commodore International, Ltd. v. Gould (In re Commodore International, Ltd.), 262 F.3d 96 (2d Cir.2001), we broadened this doctrine. Commodore involved a suit brought by an unsecured creditors' committee against various officers and directors of the debtor under 11 U.S.C. § 1109(b) for fraud, waste, and mismanagement. Commodore, 262 F.3d at 98. Unlike in STN, the debtors-in-possession in Commodore had not unreasonably refused to bring suit, but they did consent to prosecution by the committee in their stead. We held that a creditors' committee may bring suit even where the trustee or debtor-in-possession has not unjustifiably refused to do so, as long as "(1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is `necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." Id. at 100 (citation omitted).
 
 
 20
 The case for recognition of creditor standing here is more compelling than in Commodore because the Trustee is also a named plaintiff, and Federal Plastics has not challenged his standing. Of course, any such claim would be meritless because §§ 548 and 549 both expressly provide that the "trustee may avoid" the fraudulent transactions described in each provision, and we have recognized that "[t]he trustee of a bankrupt estate has broad powers under the Bankruptcy Code to avoid certain transfers of property made by the debtor either after or shortly before the filing of the bankruptcy petition." Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52, 55 (2d Cir.1997). Because the Trustee had standing, Federal Plastics would still be exposed to him for the full amount of the fraudulent transfer even if BNP did not have standing.
 
 
 21
 The Trustee's participation as a party is also significant because, unlike the plaintiffs in Commodore, BNP is not replacing the Trustee as a claimant; it is simply assisting him with the litigation. The Agreement requires that "BNP and [the] Trustee ... confer on decisions concerning the claims to be jointly prosecuted." Consequently, the Trustee has all the rights of a party-plaintiff, including the right to control the course of the litigation with BNP under the supervision of the District Court.
 
 
 22
 The Agreement makes clear that BNP has the Trustee's consent to bring suit. Thus, we need only discuss the second prong of the Commodore test, which requires that the litigation be both in the best interest of the bankruptcy estate and necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. Commodore, 262 F.3d at 100.[7]
 
 
 23
 The Bankruptcy Court correctly concluded that joint prosecution was in the best interest of the estate. As the District Court recognized, the estate incurred no risk of loss by entering into the Agreement because it required BNP to pay for all litigation expenses, regardless of whether the lawsuit was successful. Further, the estate lacked the resources to bring this action on its own. Glinka, 199 B.R. at 494. Therefore, while the Agreement did not guarantee the estate any recovery, the estate could not have recovered anything from Federal Plastics in its absence. Accordingly, if the Trustee had not entered into the Agreement with BNP, Federal Plastics would have succeeded in evading the bankruptcy laws and benefitting financially at the expense of Housecraft's estate.
 
 
 24
 Even where it is in the best interest of the estate, the second prong of Commodore prohibits a court from awarding standing to a creditor unless the litigation "is `necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." 262 F.3d at 100 (citation omitted). We find that extending standing to BNP meets this test. As previously stated, without BNP's help the Trustee would not have been able to recover any part of the fraudulent transfers. Further, the District Court reasonably determined that the division of recovery in the Agreement was fair, especially in light of BNP's security interest in the containers and in light of the fact that Federal Plastics is the only Housecraft creditor objecting to the Agreement. Finally, the court's approval of the Agreement promoted the efficient resolution of the proceedings because it prevented the likelihood of future litigation between the estate and BNP over the applicability of BNP's security interest in the containers to the money recovered in their stead. Accordingly, we find that BNP has met all of the requirements for standing set forth in Commodore.
 
 
 25
 Federal Plastics argues that Commodore should not apply to secured creditors because "[i]n contrast to the common interest shared by the debtor-in-possession or bankruptcy trustee and the unsecured creditors' committee, a secured creditor's interests are virtually certain to conflict with the estate's." (Appellant's Reply Br. at 7.) We disagree. First, Commodore mandates that creditors obtain the consent of the trustee or debtor-in-possession before bringing suit, and the trustee may withhold his consent where a secured creditor's interests are adverse to those of the estate. Second, in order for any creditor — secured or unsecured — to obtain standing under Commodore, the court must find that the creditor's interests in bringing the litigation do not conflict with those of the estate. Thus, as a matter of law, if a secured creditor's interests conflict with those of the estate, the secured creditor cannot obtain standing under Commodore.
 
 III. Post-Petition Setoff
 
 26
 At trial, the Trustee proved the following: (1) Federal Plastics provided four shipments of raw plastic to Housecraft for use in making the Nutribar containers following the filing of the bankruptcy petition; (2) the invoice value of this raw plastic was $37,775; (3) Housecraft molded the plastic into 1,150,320 Nutribar containers, which it transferred back to Federal Plastics; and (4) Federal Plastics sold these containers to Santé for $79,372 Canadian. Because the court found that this transaction violated § 549, it held Federal Plastics liable for the full $79,372 Canadian that it received from Santé as payment for these sales. Federal Plastics argues that it is entitled to a setoff against the judgment of $37,775, the value of the raw material that it supplied to Housecraft post-petition. We disagree.
 
 
 27
 The Bankruptcy Code provides for the possibility of offsetting mutual debts between a creditor and a debtor that arose pre-petition, see 11 U.S.C. § 553, but no similar provision exists for post-petition debts. While some courts have allowed post-petition setoff in other circumstances, see, e.g., Palm Beach County Bd. of Pub. Instruction v. Alfar Dairy, Inc. (In re Alfar Dairy, Inc.), 458 F.2d 1258, 1262 (5th Cir.1972), there is no authority for setoff against an avoided post-petition transfer of property. Because such a setoff would be particularly inappropriate where, as here, the transfer was fraudulent and the transferee acted neither in good faith nor with the authorization of the Bankruptcy Court, the District Court properly declined to award Federal Plastics a setoff.[8]
 
 CONCLUSION
 
 28
 For the foregoing reasons, we affirm the judgment of the District Court.
 
 
 
 Notes:
 
 
 [1]
 BNP has a security interest in Housecraft's machinery, equipment, inventory, and accounts receivable, which is valued in the bankruptcy petition at $8,502,938. Because the petition does not list any other creditors with a security interest in Housecraft's inventory, there is no dispute that BNP's claim to the Nutribar containers has priority
 
 
 [2]
 The proceeding was originally brought before the Bankruptcy Court, but in June 1994 the District Court granted a motion to withdraw the reference pursuant to 28 U.S.C. § 157(d)
 
 
 [3]
 Section 548(a)(1) provides:
 The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily —
 (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
 (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
 (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
 (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.
 11 U.S.C. § 548(a)(1).
 
 
 [4]
 In concluding that the Agreement was in the best interest of the estate, the Bankruptcy Court noted that this was "a no asset case," meaning that the estate did not have the money necessary for the Trustee to pursue the claims against Federal Plastics on its ownSee Glinka, 199 B.R. at 494.
 
 
 [5]
 Section 1359 provides: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."
 
 
 [6]
 Because we need not reach the issue, we take no position on whether the Agreement would otherwise violate § 1359
 
 
 [7]
 AlthoughSTN and Commodore both involved creditors' committees, the holdings of those cases also apply to individual creditors such as BNP. Numerous courts have granted individual creditors standing to sue in the stead of a trustee or debtor-in-possession. See, e.g., Avalanche Maritime, Ltd. v. Parekh (In re Parmetex, Inc.), 199 F.3d 1029, 1031 (9th Cir.1999); Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.), 66 F.3d 1436, 1446 (6th Cir.1995); William B. Tanner Co. v. United States (In re Automated Business Sys., Inc.), 642 F.2d 200, 201 (6th Cir.1981); Campana v. Pilavis (In re Pilavis), 233 B.R. 1, 3-4 (Bankr.D.Mass. 1999); U.S.A./FmHA v. Indi-Bel, Inc. (In re Williams), 167 B.R. 77, 82 (Bankr.N.D.Miss. 1994). While some of these courts require individual creditors to satisfy a more stringent standard than creditors' committees in order to obtain standing, such a requirement is unnecessary in our circuit because, under Commodore, we only grant standing to creditors-either individuals or committees-where doing so is in the best interest of the estate.
 
 
 [8]
 Federal Plastics' claim is also inconsistent with the Bankruptcy Code. Section 502(d) states that "the court shall disallow any claim of any entity ... that is a transferee of a transfer avoidable under section ... 548[or] 549 ... of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable...." 11 U.S.C. § 502(d) (2000). Thus, even if Federal Plastics had filed a proof of claim with the Bankruptcy Court for the value of the raw plastic, the Bankruptcy Code explicitly bans its allowance until Federal Plastics has repaid the estate for the fraudulently transferred property. Because Federal Plastics has not done so, allowing a setoff would undermine this provision