**In re SMITH BROS. MOTORS, INC. dba Smith, Smith Chrysler, Smith Dodge, and Smith Jeep, Debtor.**

No. 02–40844 J.

United States Bankruptcy Court, N.D. California.

Dec. 5, 2002.

---

Eric A. Nyberg, Kornfield, Paul and Nyberg, Oakland, CA, for debtor.

Michael D. Cooper, Wendel, Rosen, Black and Dean, Oakland, CA, for trustee.

Minnie Loo, Office of U.S. Trustee, Oakland, CA, for U.S. Trustee.

Michael J. Carroll, Law Offices of Erskine and Tulley, Randy R. Rogers, Murphy, Sheneman, Julian and Rogers, San Francisco, CA, Larry O. Folks, Santin, Poli and Ball, Phoenix, AZ, Bennett J. Murphy, Hennigan, Bennett and Dorman, Los Angeles, CA, David E. Vallerga, Law Offices of Vallerga and Vallerga, Belmont, CA, Annie Verdries, Lewis, Brisbois, Bisgaard and Smith, Costa Mesa, CA, for creditors.

Mahnaz Khamanian, Richmond, CA, pro se creditor.

Spencer, Fane, Britt and Browne, Kansas City, MO, pro se creditor.

## DECISION—BANK ONE'S MOTION FOR LEAVE AND STANDING TO INITIATE SURCHARGE ACTION

EDWARD D. JELLEN, Bankruptcy Judge.

Creditor Bank One, N.A. ("Bank One") has moved the court for an order granting it leave and standing to pursue a surcharge action under Bankruptcy Code § 506(c) [1] against Amresco Commercial Finance, Inc. ("Amresco"). The motion is opposed by Amresco and by David A. Bradlow, chapter 11 trustee herein (the "trustee"). The court holds that even if it has the authority to permit Bank One to assert derivatively the trustee's standing under § 506(c), the facts here do not justify the granting of such relief. The court will therefore deny Bank One's motion.

### A. Background

The relevant facts are essentially undisputed. The debtor, which operates a new and used car dealership, filed a voluntary chapter 11 petition herein on February 15, 2002. On March 28, 2002, the court appointed the trustee to serve as representative of the debtor's estate.

At the date of the petition, Bank One and Amresco were holders of security interests in the debtor's property. Bank One claims a first priority lien as to the debtor's new and used motor vehicles and the proceeds thereof; Amresco claims a first priority lien on the debtor's accounts receivable (other than those arising from the sale of a motor vehicle), equipment, and franchise rights. Pursuant to an Intercreditor Agreement that Richard Smith, the debtor's principal, executed in his individual capacity after the filing of the petition, Bank One also claims a lien on 58% of Richard Smith's personal assets, and Amresco claims a lien on the remaining 42%. The parties do not concede, and the court has made no finding as to, the relative priorities of Bank One and Amresco in any assets of the debtor or Richard Smith.

Shortly after the filing of the petition, the debtor needed to use the "cash collateral," as defined in § 363(a), of Bank One and Amresco to operate its business, and entered into a stipulation with them by which Bank One and Amresco permitted the debtor to use their cash collateral pursuant to the provisions thereof. The court approved the stipulation pursuant to sever-

---

1. Bankruptcy Code § 506(c) provides: "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

All further section references herein are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

al interim orders and a final order, which was entered March 7, 2002.

After the appointment of the trustee, the trustee found the estate in need of additional financing to fund the debtor's business, and negotiated a loan with Amresco that would provide the estate with additional financing of up to $2 million. The court approved the financing arrangement pursuant to an interim order and a final order, which was entered on May 20, 2002. Bank One did not object to entry of the order, participated in the negotiation of its terms, and approved the form and content thereof.

Thereafter, a dispute between Amresco and Bank One surfaced as to which creditor had the superior lien claim to certain valuable franchise rights of the debtor's Chrysler dealership. Amresco contends that as of the petition date, the franchise rights belonged to the debtor, and thus, are subject to its prepetition security agreement with priority over any conflicting security interest of Bank One. Bank One contends that the franchise rights belong to Richard Smith, individually, and thus, that it has a pro rata 58% interest in such franchise rights pursuant to the above-mentioned Intercreditor Agreement.

Apparently fearful that Amresco's claim to the franchise rights might prove to be superior to its own, Bank One filed the present motion. Bank One contends that the estate is unable to compensate it for the cash collateral that the estate consumed, and that its "superpriority" administrative claim under Bankruptcy Code § 507(b) [2] will prove to be worthless because of all the liens on estate property.

Bank One further contends that it consented to the use of its cash collateral and to the financing by Amresco on the assumption that it had a valid lien on 58% of the franchise rights, and that it "would never have consented ... had it not firmly believed that it would receive a 58% allocated share of the sales proceeds of the Franchise Rights." *Motion*, pages 6–7. Bank One also argues that at the time it provided the foregoing consents, it believed that its "replacement lien rights and 'superpriority' administrative expense claim ... due to the estate's use of its cash collateral would have little or no value" and that "the only reason [it] perceived that it should proceed ... at that time was to garner the value of the Franchise Rights upon a sale of the Dealership." *Motion*, page 7.

Bank One therefore now asks for the court's authority to pursue a surcharge action against Amresco seeking to surcharge Amresco's collateral in an amount equal to the greater of Bank One's loss resulting from its post-petition financial accommodations to the estate, or 58% of the value of the franchise rights at issue. *Motion*, page 13.

**B.** *Discussion*

Bank One concedes that, absent leave of court, it lacks standing to prosecute an action under § 506(c). In *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), the Supreme Court held that because § 506(c) vests the right to seek a surcharge of a secured party's collateral exclusively in "the trustee," a party other than the trustee has no independent right to seek a surcharge under § 506(c).

---

**2.** Section 507(b) provides, in relevant part: "If the trustee, under section ... 363 ... of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from ... the use, sale, or lease of such property under section 363 of this title, ..., then such creditor's claim under such subsection shall have priority over every other claim under such subsection."

*Id.* at 1951. The Supreme Court, however, expressly left open the question whether a bankruptcy court could "allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c)." *Id.* n. 5. Not surprisingly, Bank One requests the court to answer this question in the affirmative, and Amresco and the trustee ask the court to answer in the negative.

Prior to *Hartford Underwriters*, it had been well established in the Ninth Circuit that a bankruptcy court may, in appropriate circumstances, confer derivative standing on an official committee of creditors to prosecute avoidance actions under Bankruptcy Code §§ 547, 548, and 549 on behalf of the trustee. *See, e.g., In re Parmetex, Inc.,* 199 F.3d 1029 (9th Cir.1999). In *Parmetex,* the court stated that such granting of derivative standing was appropriate when the trustee stipulated that the creditor's committee could sue on his behalf, and the court approved the stipulation. *Id.* at 1031. *See also In re Spaulding Composites Co., Inc.,* 207 B.R. 899 (9th Cir. BAP 1997).

After *Hartford Underwriters*, the Second Circuit held that a creditor could assert fraudulent transfer claims vested in the trustee under § 548(a), if: (a) the trustee consents, and (b) the court finds that the action is in the best interest of the estate and is necessary and beneficial to the efficient resolution of the bankruptcy proceedings. *In re Housecraft Industries USA, Inc.,* 310 F.3d 64, 70 (2d Cir.2002).[3]

Even if a court may, notwithstanding *Hartford Underwriters*, authorize a party other than the trustee to act on the trustee's behalf in asserting an avoidance action under § 547, 548, or 549, it does not automatically follow that the court may authorize a party other than the trustee to bring an action under § 506(c). This is so because the proceeds of a recovery under § 547, 548, or 549 will generally go to and benefit the estate, whereas a recovery under § 506(c) by a party other than the trustee would pass "directly to the claimant with no gain to the estate." *In re Debbie Reynolds Hotel & Casino, Inc.,* 255 F.3d 1061, 1067 (9th Cir.2001) quoting *In re Palomar Truck Corp.,* 951 F.2d 229, 232 (9th Cir.1991) (Although *Palomar's* holding as to standing under § 506(c) was overruled by *Hartford Underwriters,* the court in *Debbie Reynolds* stated that the above-quoted language in *Palomar* survived *Hartford Underwriters*). Thus, the considerations concerning derivative standing under §§ 547, 548, and 549, on the one hand, and under § 506(c), on the other, are not the same.

The court's attention has not been directed to any cases decided after *Hartford Underwriters* where a court authorized a party other than the trustee to assert the trustee's rights under § 506(c).[4]

■ Here, the court need not resolve the issue of whether it may, in an appropriate case, confer derivative standing on a party to assert the trustee's rights under § 506(c). This is so because even if the answer is in the affirmative, this is not an appropriate case for the court to do so.

The trustee has not consented to allow Bank One to act in his stead, a factor that has been held to be determinative, at least when the trustee is not acting unreasonably. *See Parmetex,* 199 F.3d at 1031; *Housecraft Industries,* 310 F.3d at 70.

**3.** In *In re Cybergenics Corp. v. Chinery,* 304 F.3d 316 (3d Cir.2002), the Third Circuit initially reached the opposite conclusion. On November 18, 2002, however, the court vacated its opinion to permit a rehearing en banc.

**4.** In *In re Suntastic USA, Inc.,* 269 B.R. 846 (Bankr.D.Ariz.2001), the court concluded that it had no authority to confer standing under § 506(c) to a party other than the trustee.

Nor is the trustee acting unreasonably, or in violation of his fiduciary duty. As the trustee persuasively argues, during his tenure, the court authorized the trustee to use a stipulated amount of Amresco's cash collateral in accordance with a stipulated budget, and to borrow funds from Amresco, on stipulated terms. In each case, Bank One and all other parties were notified of the proposed terms, and did not object. In each case, the stipulations were approved by the court. It was never contemplated by the trustee, or Amresco, that in addition to the stipulated financial concessions it made to preserve the going concern value of the estate, Amresco would also be subject to an involuntary surcharge by the trustee to cover any losses beyond those that might have resulted from the expenditures contemplated by the stipulated budgets. That simply was not the deal the parties made.

For the foregoing reasons, the trustee acknowledges, not unreasonably, that he does not have a valid surcharge claim against Amresco under § 506(c). Bank One, standing in the shoes of the trustee, can fare no better.

Nor is there any allegation that either the trustee or Amresco breached the cash collateral and financing stipulations or violated the orders approving same. Indeed, Bank One does not dispute that the trustee did not exceed the agreed upon budgets, and that Amresco complied with its end of its bargain with the trustee.

Bank One's main argument, rather, is that its expectation of having a 58% interest in the debtor's franchise rights may be disappointed, and that "equity" dictates that it be allowed to surcharge Amresco's collateral to make up for any such disappointment. This argument fails for numerous reasons.

First, there is no allegation that Amresco engaged in any misconduct or misrepresentations that victimized the trustee. The trustee was not even a party to the Intercreditor agreement under which Bank One claims its 58% interest in the franchise rights. Therefore, whatever disappointments or wrongs that Bank One believes resulted from the Intercreditor Agreement did not vest any surcharge rights in the trustee. Again, Bank One standing in the shoes of the trustee can fare no better.

■ Second, the purpose of § 506(c) is to compensate the estate when it expends funds to protect and preserve the collateral of a secured party. *See In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir.1987). Thus, its purpose is not to compensate a secured party who miscalculated the value or priority of its lien position, even if the party made financial concessions to the estate as a result of the miscalculation. *Id. See also Debbie Reynolds*, 255 F.3d at 1068.

■ The fact that Bank One's motion is outside the perimeter of § 506(c) is underscored by the relief Bank One states it will seek from Amresco if the motion is granted: a surcharge in an amount equal to the greater of Bank One's loss resulting from the post-petition financial accommodations to the estate it agreed to, allegedly in reliance on it having a 58% interest in the franchise rights, or 58% of the value of the franchise rights at issue. *Motion*, page 13. Clearly, neither measure is an appropriate remedy under § 506(c), or in keeping with its purpose. Rather, a surcharge is appropriate only when a "concrete" and "quantifiable" benefit has been conferred on the secured party to be surcharged, *see In re Compton Impressions, Ltd.*, 217 F.3d 1256, 1261 (9th Cir.2000); *Debbie Reynolds*, 255 F.3d at 1068, and the appropriate amount of the surcharge is the amount expended "directly to protect and

preserve the collateral" of the secured party. *Cascade Hydraulics*, 815 F.2d at 548.

In the present context, Bank One's disappointed expectations as to the franchise rights, although unfortunate from Bank One's standpoint, are simply irrelevant. The facts here confer no § 506(c) rights on the trustee, or derivatively, on Bank One. Nor do they justify imposition of a surcharge against Amresco's collateral.

### C. *Conclusion*

For the foregoing reasons, the court will issue its order denying Bank One's motion.