07-2604-bk
In Re: Adelphia Communications Corporation

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: August 27, 2008)                          Decided: September 24, 2008)

Docket No. 07-2604-bk

_____

IN RE: ADELPHIA COMMUNICATIONS CORPORATION,

\*\*\*

OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF ADELPHIA
COMMUNICATIONS CORPORATION,

*Appellant*,

—v.—

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ADELPHIA
COMMUNICATIONS CORPORATION,

*Appellee.*

_____

B e f o r e :

NEWMAN and SOTOMAYOR,[*]

*Circuit Judges.*

_____

Appeal from a May 17, 2007 order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, J.), dismissing the appeal by the Official Committee of Equity Security Holders of the confirmation order of the United States Bankruptcy Court for the Southern District of New York (Robert E. Gerber, J.) approving a Chapter 11 plan. Because we conclude that the bankruptcy court could transfer the Equity Committee's derivative claims to a litigation trust, even absent the Committee's consent, we AFFIRM the judgment of the district court dismissing the Equity Committee's appeal.

_____

Peter D. Morgenstern, Gregory A. Blue, Eric B. Fisher, Morgenstern Jacobs & Blue,

_____

[*] Although originally assigned to this panel, Judge Guido Calabresi recused himself. As permitted by Local Rule § 0.14, the panel consists of two judges.

LLC, New York, NY, *for Appellant*.

Brian E. O'Connor, Rachel C. Strickland, Brian P. Guiney, Willkie Farr & Gallagher LLP, New York, NY, *for Appellees Reorganized Debtors* & David M. Friedman, Adam L. Shiff, Michael C. Harwood, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, *for Appellee Official Committee of Unsecured Creditors*.

_____

SOTOMAYOR, *Circuit Judge*:

The Official Committee of Equity Security Holders (the "Equity Committee") appeals from a May 17, 2007 order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, J.), dismissing the Equity Committee's appeal of the confirmation order of the United States Bankruptcy Court for the Southern District of New York (Robert E. Gerber, J.) approving a Chapter 11 plan of reorganization (the "Plan") for Adelphia Communications Corporation ("Adelphia") and certain affiliated debtors. Pursuant to the Plan, the Equity Committee's derivative claims were transferred to a litigation trust. The Equity Committee argues, *inter alia*, that the bankruptcy court lacked the authority to transfer the derivative claims, without its consent, and therefore the district court erred in dismissing its appeal. We disagree and affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are set forth in the bankruptcy court's opinion. *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 271-72 (Bankr. S.D.N.Y. 2007). We recite only those facts relevant to the issue of the bankruptcy court's authority to transfer the Equity Committee's derivative claims to a litigation trust, without the Equity Committee's consent.

In the bankruptcy proceedings of Adelphia and its subsidiaries (collectively, the

2

"Debtors"), the United States Trustee for the Southern District of New York appointed the Equity Committee to protect equity holder interests because, at that time, the ultimate value of the Debtors' assets was uncertain and there existed a possibility of residual value for the equity holders. After the Debtors rejected a demand to bring certain claims against the Debtors' bank lenders and investment banks, the Equity Committee moved for standing to assert those claims on behalf of Adelphia. The Debtors neither supported nor opposed this motion, and, on August 30, 2005, the bankruptcy court allowed the Equity Committee to pursue the claims derivatively. *In re Adelphia Commc'ns Corp.*, 330 B.R. 364, 386 (Bankr. S.D.N.Y. 2005). Although acknowledging that it was not "particularly optimistic" about the "ultimate prognosis . . . for all but a few of the Equity Committee's claims," the bankruptcy court nonetheless concluded that the prosecution of the claims was in the best interests of the estate because the claims were sufficiently "colorable." *Id.* at 385–86.

On February 9, 2006, the district court withdrew the reference to the bankruptcy court of the Equity Committee's adversary proceeding, thereby reserving the proceeding for itself. The district court concluded that withdrawal was both permitted and mandatory because the claims were "non-core" and involved "substantial and material consideration and significant interpretation" of federal law outside of the Bankruptcy Code. Nonetheless, the district court allowed the bankruptcy court to maintain jurisdiction over pending motions to dismiss in the adversary proceeding because the bankruptcy judge had "clearly devoted considerable time and effort to them already."

On January 5, 2007, the bankruptcy court entered an order confirming the Plan for the

3

Debtors. The Plan provided for the transfer of various estates' claims, including those of Adelphia asserted by the Equity Committee, to a litigation trust managed by five trustees who were appointed by the Official Committee of Unsecured Creditors (the "Creditors' Committee"). Recoveries by the litigation trust would first be paid to all Debtors' unsecured creditors that had not yet realized the full value of their claims, without regard to which of the Debtors' claims had generated the recoveries. Remaining funds would be distributed to shareholders.

Although the Equity Committee objected to the transfer of the derivative claims to a litigation trust, the bankruptcy court rejected its arguments. The court calculated that for "value to pour down all the way to equity, the [litigation trust] would have to recover at least $6.5 billion—an ambitious goal, which seemingly is so ambitious that it could fairly be said that equity is hopelessly out of the money." *In re Adelphia Commc'ns Corp.*, 368 B.R. at 272. It further explained that it had

> leaned over backward in this case to give the Equity Committee a fair shot at maximizing value in these cases, and to ensure that value wasn't unfairly taken away from it by senior classes, but the time for that has come and gone. The Equity Committee served responsibly and well. But now its job is done.

*Id*. at 276.

The district court subsequently dismissed the Equity Committee's appeal. *In re Adelphia Commc'ns Corp.*, 371 B.R. 660 (S.D.N.Y. 2007).

## DISCUSSION

The Equity Committee argues that, as a result of its derivative standing, it acquired ownership and control over the claims asserted against pre-petition lenders and investment banks on behalf of Adelphia. Accordingly, the Equity Committee asserts that its claims could not be

4

transferred to a litigation trust without the Committee's consent.  We hold that, to the contrary, a court may withdraw a committee's derivative standing and transfer the management of its claims, even in the absence of that committee's consent, if the court concludes that such a transfer is in the best interests of the bankruptcy estate.

The Bankruptcy Code does not expressly authorize committees or individual creditors—in contrast to trustees and debtors-in-possession—to sue on behalf of an estate. Nevertheless, this Circuit has recognized an "implied, but qualified" right under 11 U.S.C. §§ 1103(c)(5) and 1109(b) for an unsecured creditors' committee to assert claims where the trustee or debtor-in-possession unjustifiably failed to bring suit or abused its discretion in not suing on colorable claims likely to benefit the reorganization estate.  *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 904-05 (2d Cir. 1985).  This Court subsequently expanded *STN Enterprises* to confer derivative standing upon a committee with the consent of either the debtor-in-possession or trustee, *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001), or when the committee acts as co-plaintiff with the debtor-in-possession or trustee, *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70–72 (2d Cir. 2002).

Although *STN Enterprises*, *Commodore* and *Housecraft* expanded the scope of derivative standing, our precedent did not undermine either the debtor's central role in handling the estate's legal affairs or the court's responsibility to monitor for abuses by the parties.  It remains "the debtor's duty to wisely manage the estate's legal claims," and this duty "is implicit in the debtor's role as the estate's only fiduciary." *In re Smart World Techs., LLC*, 423 F.3d 166, 175

5

(2d Cir. 2005); *see also Commodore*, 262 F.3d at 99 (conferring derivative standing on a plaintiff in order to provide "an effective method for the [debtor-in-possession] to manage the estate and fulfill its duties").[1] The debtor-in-possession may not always fulfill its responsibilities, and we have recognized that a debtor-in-possession may unjustifiably fail to bring valid claims or abuse its discretion by not suing. *STN Enterprises,* 779 F.2d at 904. Yet it is the court's role—and not that of a derivative plaintiff—both to oversee the litigation and "to check any potential for abuse by the parties." *Commodore*, 262 F.3d at 100.

Despite this precedent, the Equity Committee argues that this Circuit concluded in *Smart World* that derivative standing equates to ownership of claims. In that case, creditors argued that the right to "appear and be heard on any issue" provided by 11 U.S.C. § 1109(b) included the right to move for settlement of an adversary proceeding despite the debtor-in-possession's objections. *Smart World*, 423 F.3d at 180–81. In rejecting the creditors' argument, our Court contrasted the limited bundle of rights provided by intervention under § 1109(b) with "ownership of the causes of action," which the Court suggested required derivative standing under *STN*. *Id*. at 182–83 (internal quotation marks omitted). The Equity Committee seizes upon this dicta regarding "ownership"—used by the Court only for the sake of comparison—to argue that the Equity Committee's derivative standing under *STN* vested it with ownership over its derivative claims. But that is not so. Although an *STN* plaintiff's rights may exceed those of intervenors under § 1109(b), it does not follow—and our Court in *Smart World* did not hold—that an *STN*

---

[1] In contrast, a committee owes a fiduciary duty to the class it represents, but not to the debtor, other classes, or the estate. *Smart World*, 423 F.3d at 175 n.12.

6

plaintiff's control over the estate's claims rivals that of the debtor-in-possession. Instead, *Smart World* emphasized the debtor's central role as the "estate's legal representative," and our Court concluded that the bankruptcy court had erred in granting derivative standing to creditors to settle a cause of action over the objection of a Chapter 11 debtor-in-possession. *Id.* at 173–74, 183.

It would be contrary to the reasoning of this Circuit's precedent to hold that the bankruptcy court's grant of derivative standing vested the Equity Committee with a veto over both the court and the debtor-in-possession. The bankruptcy court not only had the authority to confer derivative standing upon the Equity Committee, it also had the authority to—and did—effectively withdraw that standing when it concluded that the Equity Committee's role was no longer in the best interests of the estate, and to transfer the derivative claims to a litigation trust.[2] Although the bankruptcy court originally conferred *STN* standing upon the Equity Committee because the Debtors had "unjustifiably failed" to bring the Equity Committee's claims, the bankruptcy court emphasized that it had not found any improper motive on the part of the Debtors in failing to pursue the claims. In fact, the bankruptcy court stated that the Equity Committee's proceeding to obtain derivative standing resembled one in which the debtor-in-

---

[2] The Equity Committee also argues that, as a result of the district court's partial withdrawal of the reference to the bankruptcy court, the bankruptcy court lacked jurisdiction to enter an order confirming a Chapter 11 plan that affected the Equity Committee's adversary proceeding. The district court never indicated that the management of the Equity Committee's claims was subject to the permissive or mandatory withdrawal of the reference to the bankruptcy court. In fact, the district court emphasized that the "non-core" claims which were removed from the bankruptcy court were "independent of the reorganization" and its transfer of claims to a litigation trust. We reject the Equity Committee's argument, which would prevent a bankruptcy court from confirming a plan that touched, however tangentially, upon an adversary proceeding before a district court.

possession consented.  *In re Adelphia Commc'ns Corp.*, 330 B.R. at 368 n.2.

Having concluded that the bankruptcy court possessed the authority to confirm a plan that transferred the Equity Committee's claims to a litigation trust, we next decide whether the bankruptcy court abused its discretion in determining that the transfer was in the best interests of the estate.  *See In re Lehal Realty Assocs.,* 101 F.3d 272, 276 (2d Cir. 1996) ("[W]e review [a bankruptcy court's] exercise of discretion for abuse.").

The Equity Committee argues that the litigation trust will pursue the derivative claims less effectively than it would because the trustees, appointed by the Creditors' Committee, possess conflicts of interest.  According to this line of reasoning, the trustees will quickly resolve litigation in order to satisfy creditors' senior claims without pursuing larger resolutions whose benefits might trickle down to shareholders.  But the Plan requires the trustees to "maximize the value of the transferred Causes of Action, whether by litigation, settlement or otherwise," and the trustees are liable for deliberately intending to injure, or recklessly disregarding the best interests of, interest holders in the litigation trust (including equity holders).  In light of these guarantees and the Equity Committee's failure to put forth any evidence suggesting that the trustees have violated their fiduciary duties, we conclude that there is no reason to second-guess the bankruptcy court's judgment.

Moreover, the bankruptcy court conducted a reasonable analysis of the costs and benefits of the Equity Committee's continued management of the claims.  Approximately seventeen months after granting *STN* standing to the Equity Committee, the bankruptcy court concluded that Adelphia's equity holders were unlikely to realize any recovery because of the significant

sums due to more senior classes.[3] *In re Adelphia Commc'ns Corp.*, 368 B.R. at 272.  In fact, because equity holders were entitled to nothing, the Plan—which gave interests in the litigation trust to equity holders—gave them "*more* than their legal entitlement." *Id*. at 275.  The bankruptcy court also concluded that while the benefits of the Equity Committee's continued litigation were questionable, the costs risked being considerable.  When the bankruptcy court granted *STN* standing to the Equity Committee, the Committee provided an assurance that it would cooperate with the Creditors' Committee.  The bankruptcy court concluded that "the joint nature of the process would render [the Equity Committee's] claims only incrementally more costly to prosecute" because of the two committees' overlapping claims.  *Id*. at 274.  But the bankruptcy court interpreted the Equity Committee's subsequent assertion of exclusive standing over the claims to be inconsistent with its earlier, cooperative stance.  *Id*.  This raised the specter of an expensive, "independent full-blown litigation." *Id*. at 274 n.324.  Given the court's cost-benefit analysis, it was not an abuse of discretion for the court to conclude that the litigation trust was in the estate's best interest.

The Equity Committee raises a final argument challenging the bankruptcy court's confirmation order.  It asserts that the Plan's litigation trust is invalid because it amounts to an unlawful "*de facto* substantive consolidation" insofar as recoveries attributable to claims owned solely by Adelphia are distributed to all of the Debtors' creditors according to the Plan's priority

---

[3] Although the Equity Committee contests the bankruptcy court's conclusion that Adelphia's equity holders were $6.5 billion "out of the money," it does not provide even a cursory analysis that would suggest that the equity holders could ever realistically be "in the money."

scheme, without regard to which estate's litigation claims generated those recoveries.[4]

Significantly, the Equity Committee argues that Adelphia's shareholders "have to get in line behind every creditor of every one of the more than 230 other debtor entities," instead of getting in line only behind Adelphia's creditors. The district court concluded that the Equity Committee's argument was "equitably moot because no effective relief can be fashioned without unwinding the entire Plan." *In re Adelphia Commc'ns Corp.*, 371 B.R. at 676.

While the district court's point is well taken, we note that the Equity Committee's contention would fail even if it were not moot. Its argument is merely a variation of its unsuccessful assertion before the bankruptcy court that the litigation trust violated the Absolute Priority Rule.[5] *See In re Adelphia Commc'ns Corp.*, 368 B.R. at 274. But a plan need not satisfy the Absolute Priority Rule so long as any class adversely affected by the variation accepts the plan, *see* 11 U.S.C. § 1126(c);[6] and it was not impermissible for Adelphia's interest holders to

_____

[4] "Substantive consolidation" usually results in "pooling the assets of, and claims against, [] two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." *In re Augie/Restivo Baking Co.,* 860 F.2d 515, 518 (2d Cir. 1988). The doctrine is used "sparingly" because it "vitally affect[s] substantive rights" of creditors. *Id.* (internal quotation marks omitted).

[5] In its current statutory form, this rule provides that, with respect to a class of unsecured claims, "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B)(ii).

[6] This section provides that "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." 11 U.S.C. § 1126(c); *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207 (1988) ("[T]he Code provides that it is up to the creditors . . . to accept or reject a

agree overwhelmingly upon a plan that shared Adelphia's litigation proceeds with other Debtors' creditors.[7]

We do not mean to trivialize, but only to place in context, the role of the derivative plaintiff. It serves "with the approval and supervision of a bankruptcy court" and shares the "labor" of litigation with the debtor-in-possession. *Commodore*, 262 F.3d at 100. Contrary to the Equity Committee's arguments, however, it does not usurp the central role of the court or debtor in overseeing and managing the estate's legal claims.

## CONCLUSION

For the foregoing reasons, the order of the district court dismissing the Equity Committee's appeal is AFFIRMED.

---

reorganization plan which fails to provide them adequate protection or fails to honor the absolute priority rule, 11 U.S.C. § 1126.").

[7] Although the Equity Committee claims that shareholders were coerced into approving the Plan, shareholders were simply encouraged to approve the Plan in exchange for potential distributions from the litigation trust.